No. 23-1353

IN THE
UNITED STATES COURT OF APPEALS
FOR THE SEVENTH CIRCUIT

| | | |
|---|---|---|
| NATIONAL ASSOCIATION FOR GUN RIGHTS; ROBERT C. BEVIS; and LAW WEAPONS, INC. d/b/a LAW WEAPONS & SUPPLY, an Illinois corporation | ) ) ) ) ) | Appeal from the United States District Court for the Northern District of Illinois, Eastern Division |
| Plaintiffs-Appellants, | ) ) | |
| v. | ) ) | |
| CITY OF NAPERVILLE, ILLINOIS, and JASON ARRES, | ) ) ) | No. 1:22-cv-04775 |
| Defendants-Appellees, | ) ) | |
| and | ) ) | |
| THE STATE OF ILLINOIS | ) ) | |
| Intervening Appellee | ) ) ) | The Honorable Virginia M. Kendall, Judge |

**PLAINTIFFS' REPLY IN SUPPORT OF
MOTION FOR INJUNCTION PENDING APPEAL**

I. **This Case is Materially Identical to *Friedman***

Plaintiffs will start with two points of agreement:

(1) The district court held that the panel opinion in *Friedman v. City of Highland Park*, 784 F.3d 406 (7th Cir. 2015), "cannot be reconciled with *Bruen*." Dkt. 63, p.16. *See* Mot. 11-12 for why the district court's holding is correct in this respect.

(2) The State asserts that Plaintiffs' challenge is "materially identical" to the challenge brought in *Friedman*. State Resp. 2. That is correct too. And it follows that since the panel

1

opinion in *Friedman* cannot be reconciled with *Bruen*, the Court should instead follow Justice Thomas's and Justice Scalia's guidance in *Friedman v. City of Highland Park, Ill.*, 577 U.S. 1039 (2015) (Thomas, J., dissenting from denial of cert.). After all, who better knows how to apply *Bruen* and *Heller* than the authors, respectively, of *Bruen* and *Heller*?

## II.   *Heller* Rejected the Appellees' Premise

Both the State and the City begin their response by referring to mass shootings to justify their arms ban. City Resp. 1-2; State Resp. 3. The premise of their argument is that the banned arms are dangerous and can be used in mass shootings and therefore they are not protected by the Second Amendment even if they are commonly possessed by law-abiding citizens for lawful purposes. Appellees' premise rests on a fundamental misunderstanding of *Heller*. On April 16, 2007, Seung Hui Cho committed a mass shooting at Virginia Tech University.[1] At the time, Cho's crime was the worst mass shooting in American history. *Id*. Cho fired 174 rounds, killed thirty-two people, and wounded many others.[2] Aside from the first two murders, Cho was able to do all of this in only a few minutes. *Id*. Cho did not use an "assault rifle" to commit his crimes.[3] He used two semiautomatic handguns. *Id*.

*Heller* was argued less than one year later on March 18, 2008,[4] and D.C. made sure the Court was aware that the worst mass shooting in U.S. history up until then had recently been committed with handguns like those banned by its ordinance. It wrote in its brief: "In the recent Virginia Tech shooting, a single student with two **handguns** discharged over 170 rounds in nine

---

[1] Ben Williamson, *The Gunslinger to the Ivory Tower Came: Should Universities Have A Duty to Prevent Rampage Killings?,* 60 Fla. L. Rev. 895, 895–96 (2008).
[2] Grant Arnold, *Arming the Good Guys: School Zones and the Second Amendment*, 2015 B.Y.U. Educ. & L.J. 481, 500–01 (2015).
[3] *Craig R. Whitney, A Liberal's Case for the Second Amendment, 31 T.M. Cooley L. Rev. 15, 19 (2014).*
[4] *Id*., 554 U.S. at 570.

minutes, killing 32 people and wounding 25 more." Brief of Petitioners, *D.C. v. Heller*, 2008 WL 102223, 53 (emphasis added). Thus, when it decided *Heller*, the Supreme Court was keenly aware that semiautomatic handguns could be used in mass shootings. Nevertheless, it struck D.C.'s ban as unconstitutional. In doing so, the Court wrote:

> **We are aware of the problem of handgun violence** in this country, and **we take seriously the concerns raised by the many *amici* who believe that prohibition of handgun ownership is a solution**. The Constitution leaves the District of Columbia a variety of tools for combating that problem, including some measures regulating handguns, [] But the enshrinement of constitutional rights necessarily **takes certain policy choices off the table. These include the absolute prohibition of handguns** held and used for self-defense in the home.

*Heller*, 554 U.S. at 636 (emphasis added).

Appellees are mistaken. The fact that the banned firearms can be used in mass shootings does not disqualify them from Second Amendment protection.

The case for upholding Second Amendment rights is even more compelling here than in *Heller*. Then-Judge Kavanaugh expressed the matter this way in his dissent in *Heller v. D.C.*, ("*Heller II*") 670 F.3d 1244(D.C. Cir. 2011):

> [C]onsidering just the public safety rationale invoked by D.C., semi-automatic handguns are more dangerous as a class than semi-automatic rifles . . . [H]andguns 'are the overwhelmingly favorite weapon of armed criminals.'… So it would seem a bit backwards – at least from a public safety perspective – to interpret the Second Amendment to protect semi-automatic handguns but not semi-automatic rifles. … [*Heller* erects a] serious hurdle … in the way of D.C.'s attempt to ban semi-automatic rifles. Put simply, **it would strain logic and common sense to conclude that the Second Amendment protects semi-automatic handguns but does not protect semi-automatic rifles**.

*Id.,* 670 F.3d at 1286 (Kavanaugh, J., dissenting) (emphasis added).

**III.     This Court Has Also Rejected Appellees' Premise**

In *Moore v. Madigan*, 702 F.3d 933 (7th Cir. 2012), this Court ruled unconstitutional an Illinois law that prohibited carrying firearms outside of a person's home. *Id*. 702 F.3d at 942. The

3

Court held that the State's assertion that the law advanced the goal of public safety was irrelevant to its resolution of the case, writing:

> **If the mere possibility that allowing guns to be carried in public would increase the crime or death rates sufficed to justify a ban, *Heller* would have been decided the other way**, for that possibility was as great in the District of Columbia as it is in Illinois.

*Id*., 702 F.3d at 939 (emphasis added).

### IV.     The Banned Arms are not Dangerous and Unusual

As set forth in the Motion, tens of millions of the banned firearms and over 150 million of the banned magazines are possessed by law-abiding citizens for lawful purposes. Mot. 7-11. Neither the City nor the State can dispute these statistics. Nevertheless, they insist the banned arms are both dangerous and unusual. City Resp. 9, n. 3; State Resp. 15-16. The Appellees are really attempting to bring means-end scrutiny into this case. They argue that the means they have chosen (a categorical ban of commonly possessed arms) achieves a legitimate governmental end (addressing mass shootings) and for that reason the laws are constitutional. City Resp. 9; State Resp. 16. But that is clearly wrong. If *Bruen* stands for anything, it stands for the proposition that means-end scrutiny of this type is prohibited. *Id*., 142 S. Ct. at 2126.

### V.     The Court Should Apply *Heller's* Simple Rule

As noted in the Motion, this is a simple case. The banned arms are commonly possessed by millions of law-abiding Americans. Mot. 7-11. Therefore, the ban is unconstitutional. In response the State argues the Court should ignore *Heller*, going so far as to assert that whether the banned arms are commonly possessed by law-abiding citizens is irrelevant. State Resp. 2.

This is plainly incorrect as Justices Thomas and Scalia noted in *Friedman*,[5] Justice Kavanaugh noted in *Heller II*,[6] and Justice Alito noted in *Caetano*.[7]

## VI. The State's Attempt to Rescue *Friedman* Fails

The State argues that the *Friedman* historical test is the same as *Bruen's* historical test, apparently because both tests use the word "history." State Resp. 8. This is wrong. Yes, *Friedman* looked to history when it held that a court must ask whether the arms were common at the time of ratification. *Id*., 784 F.3d at 410. But in *Caetano*, the Court held that this is exactly the type of historical question a court may **not** ask. *Id*. 577 U.S. at 411-12 (lower court's holding that arms were unprotected because they were not in common use at the time of ratification was "inconsistent with *Heller*").

## VII. The Magazines are Arms

The State asserts magazines are not arms. Resp 9. This is not correct. In *Fyock v. City of Sunnyvale*, 25 F. Supp. 3d 1267 (N.D. Cal. 2014), the Court rejected an identical argument because magazines "are integral components to vast categories of guns." *Id*. at 1276. The Ninth Circuit affirmed in *Fyock v. Sunnyvale*, 779 F.3d 991 (9th Cir. 2015). The Ninth Circuit held that "to the extent that certain firearms capable of use with a magazine – e.g., certain semiautomatic handguns – are commonly possessed by law-abiding citizens for lawful purposes, **our case law supports the conclusion that there must also be some corollary, albeit not unfettered, right to possess the magazines** necessary to render those firearms operable." *Id*. 779 F.3d at 998 (emphasis added). Subsumed within that holding is that magazines are arms; otherwise there would be no right to possess them. The Third Circuit agrees: "Because magazines feed

---

[5] 577 U.S. at 1039 (Thomas, J., joined by Scalia, J., dissenting from denial of cert.).
[6] 670 F.3d at 1289 (Kavanaugh, dissenting).
[7] *Caetano v. Massachusetts*, 577 U.S. 411, 418 (2016) (Alito, J., concurring).

ammunition into certain guns, and ammunition is necessary for such a gun to function as intended, magazines are 'arms' within the meaning of the Second Amendment." *Ass'n of New Jersey Rifle & Pistol Clubs, Inc. v. Att'y Gen. New Jersey*, 910 F.3d 106, 116 (3d Cir. 2018), abrogated on other grounds by *Bruen*.

To resolve this issue, the Court should ask a simple question. Would it be constitutionally permissible for the State to ban ALL magazines? That is the logical conclusion from the State's argument. If magazines are not arms, there is no reason it could not ban them all. But that is an absurd conclusion.

In *Ocean State Tactical, LLC v. State of Rhode Island*, 2022 WL 17721175 (D.R.I. 2022), apparently acting as its own firearms expert, the district court asserted that "a firearm can fire bullets without a detachable magazine." *Id*. *12 (citing no expert). But even assuming *arguendo* the court were correct, the statement has no constitutional relevance. In order for a semi-automatic firearm to operate qua semi-automatic firearm, a magazine must be inserted. This is just common sense. As the Third Circuit recognized, if cartridges are not being fed from a magazine, semi-automatic fire is impossible because the cartridges would have to be fed manually after each shot. In other words, without a magazine, a semi-automatic firearm is reduced to a single-shot firearm. Thus, *Ocean State Tactical* effectively holds that the State could constitutionally outlaw multi-shot firearms by outlawing magazines. That is obviously inconsistent with *Heller*, to say the least.

## VIII. The State is Confused About the *Heller/Bruen* Test

The State confuses the first and second prongs of the *Heller/Bruen* test when it argues that all firearms that can accept a detachable LCM can work with a smaller magazine. State Resp. 10. The State's confusion results from conflating the first step of the *Heller/Bruen*

6

test (text) with the second step (history).[8] Under the first step, a magazine is a bearable arm and thus presumptively protected. Does this mean that the State cannot ban so-called large capacity magazines? Not necessarily. Just like any arm, if the State can demonstrate that a regulation banning large capacity magazines is "consistent with the Nation's historical tradition of firearm regulation," it can ban them (though, as discussed in the Motion, it cannot make such a demonstration).

In summary, a magazine of some size is necessary to make the Second Amendment right to keep and bear a semi-automatic firearm effective. Therefore, magazines, in general, constitute bearable arms that are prima facie protected by the Second Amendment under prong one (text) of the *Heller/Bruen* test. Whether magazines of a particular size can be banned is a different question that must be resolved under prong two (history) of that test.

## IX.     The State Misapprehends the Common Use Test

Unable to rebut the overwhelming evidence that the arms it has banned are "typically possessed for lawful purposes," the State retreats to the specious argument that an arm is not protected unless it is in fact frequently **actually** used for self-defense. State Resp. 11. The State's interpretation flies in the face of *Heller's* plain language, as Justice Thomas recognized in *Friedman v. City of Highland Park, Ill.*, 577 U.S. 1039 (2015) (Thomas, J., dissenting from denial of cert.). In discussing the arms ban at issue in that case, Justice Thomas wrote that Americans own these arms "for lawful purposes like self-defense." *Id*. Justice Thomas reached this conclusion, as the Court did in *Heller*, based on the bare fact that millions of Americans have chosen to acquire the arms. *Id*. Neither Justice Scalia in *Heller* nor Justice Thomas in *Friedman* required a study demonstrating "actual use" to support their conclusions.

---

[8] The Courts in *Oregon Firearms Fed'n, Inc. v. Brown*, 2022 WL 17454829 (D. Or. 2022) and *Ocean State Tactical* are also confused in this regard. That is why those cases are patently erroneous.

## X.     Appellees' Historical Analysis Fails

Appellees advance several statutes as potential analogues to the challenged laws. They all fail for one simple reason. Not a single one of those laws is analogous to a categorial ban of arms commonly possessed by law-abiding citizens for lawful purposes. The Court can know this with absolute certainty without even examining the laws. If such a law existed, surely Appellees would point to it and quote it in their briefs. They would say something like "weapon X was an arm in common use by law-abiding citizens during the founding era, and law B from the founding era categorically banned its possession." Of course, they have not identified any such law, because we have known since *Heller* that no such law exists. Instead, Appellees have identified laws that regulated carry, especially concealed carry. But no one doubts that the State can ban concealed carry. *Heller* said as much. And if laws banning concealed carry were analogous to categorical bans of common arms, *Heller* would have been decided the other way. Appellees have also pointed to some 20th century laws. But in *Bruen* the Court ignored 20th century evidence as irrelevant, because that evidence came far too late to "provide insight into the meaning of the Second Amendment." *Id*. 142 S. Ct. at 2154, n. 28.

## XI.    Appellees Misrepresents *Heller's* "Military Service" Discussion

The City writes that "Courts have noted that they [i.e. "assault weapons"] are 'most useful in military service.'" City Resp. 7, citing *Heller*, 554 U.S. at 627. The State makes the same argument. State Resp. 11. Both arguments misrepresent *Heller*. *Heller* held that automatic M-16 rifles are most useful in military service. Appellees misrepresent *Heller* when they conflate its reference to automatic rifles with the semi-automatic firearms banned by the challenged laws. The difference between automatic M-16 rifles and semi-automatic rifles like AR-15s is legally significant. See *Staples v. United States*, 511 U.S. 600 (1994) (contrasting M-16s which are

illegal for civilian use with semi-automatic firearms like AR-15s which "traditionally have been widely accepted as lawful possessions"). *See also Caetano v. Massachusetts*, 577 U.S. 411, 419 (2016) (Alito, J., concurring) ("*Miller* and *Heller* [merely] recognized that militia members traditionally reported for duty carrying 'the sorts of lawful weapons that they possessed at home,' and that the Second Amendment therefore protects such weapons as a class, regardless of any particular weapon's suitability for military use.")

### XII. The Injunction Must Protect Purchasers and Sellers

The Second Amendment protects the right to acquire arms. *Ezell v. City of Chicago*, 651 F.3d 684, 704 (7th Cir. 2011). There are two parties to every transaction in which arms are acquired, the purchaser and the seller. Both sides of the transaction must be protected for the right to be effective. An injunction that protects only seller Plaintiff Law Weapons, Inc. ("LWI") is meaningless if all potential purchasers fear criminal prosecution. It follows that for injunctive relief to be effective, the injunction must extend beyond the parties to this action. That is why Plaintiffs requested a statewide injunction in the district court as well as in this Court.

/s/ Barry K. Arrington

_____
Barry K. Arrington
Arrington Law Firm
4195 Wadsworth Boulevard
Wheat Ridge, Colorado 80033
Voice: (303) 205-7870
Email: barry@arringtonpc.com

Designated Local Counsel:
Jason R. Craddock
Law Office of Jason R. Craddock
2021 Midwest Rd., Ste. 200
Oak Brook, IL 60523
(708) 964-4973
cradlaw1970@gmail.com or craddocklaw@icloud.com

## CERTIFICATE OF COMPLIANCE

This document complies with the type-volume limit of Fed.R.App.P. 27(d)(2)(C) because, excluding the parts of the document exempted by Fed.R.App.P. 32(f), this document contains 2,574 words.

This document complies with the typeface requirements of Fed.R.App.P. 32(a)(5) and Seventh Circuit Rule 32(b) and the type-style requirements of Fed.R.App.P. 32(a)(6) because this document has been prepared in a proportionally spaced typeface using Microsoft Word in 12-point Times New Roman font.

*/s/ Barry K. Arrington*
_____
Barry K. Arrington

## CERTIFICATE OF SERVICE

I hereby certify that on March 24, 2023, I electronically filed a true and correct copy of the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing via email counsel of record:

*/s/ Barry K. Arrington*
_____
Barry K. Arrington