No. 23-1353

---

## UNITED STATES COURT OF APPEALS
## FOR THE SEVENTH CIRCUIT

---

NATIONAL ASSOCIATION FOR GUN RIGHTS; ROBERT C. BEVIS; and
LAW WEAPONS, INC d/b/a LAW WEAPONS & SUPPLY, an Illinois corpo-
ration,

*Plaintiffs-Appellants,*

v.

CITY OF NAPERVILLE, ILLINOIS and JASON ARRES,

*Defendants-Appellees,*

and

THE STATE OF ILLINOIS,

*Intervening-Appellee*

---

APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DIS-
TRICT OF ILLINOIS, EASTERN DIVISION, NO. 1:22-CV-04775
THE HONORABLE VIRGINIA M. KENDALL, JUDGE PRESIDING

---

## PETITION FOR REHEARING IN BANC

---

BARRY K. ARRINGTON
ARRINGTON LAW FIRM
4195 WADSWORTH BOULEVARD
WHEAT RIDGE, COLORADO 80033
(303) 205-7870

JASON R. CRADDOCK
LAW OFFICE OF JASON R. CRADDOCK
2021 MIDWEST ROAD, SUITE 200
OAK BROOK, ILLINOIS 60523
(708) 964-4973

*Attorneys for Plaintiffs-Appellants*

## CIRCUIT RULE 26.1 DISCLOSURE STATEMENT

The undersigned counsel for Plaintiffs-Appellants furnishes the following information in compliance with Circuit Rule 26.1.

**(1) The full name of every party that the attorney represents in the case:**

National Association for Gun Rights

Robert C. Bevis

Law Weapons, Inc. d/b/a Law Weapons & Supply

**(2) The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:**

Arrington Law Firm

Law Offices of Jason R. Craddock

**(3) If the party or amicus is a corporation:**

**(i) Identify all of its parent corporations, if any:**

None. Neither corporate party has a parent corporation.

**(ii) List any publicly held company that owns 10% or more of the party's or amicus' stock:**

None.

_/s/ Barry K. Arrington_
Counsel for Plaintiffs-Appellants

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ....................................................................iii

RULE 35(b)(1) STATEMENT IN SUPPORT OF REHEARING IN BANC ...1

FACTUAL AND PROCEDURAL BACKGROUND ......................................2

REASONS FOR GRANTING THE PETITION ...........................................4

   I.    The *Heller/Bruen* Framework for Second Amendment Analysis .......4

   II.   *Bruen* Step 1: The Plain Text Covers Plaintiffs' Conduct...................5

   III.  *Bruen* Step 2: Because the Banned Arms are in Common
       Use, the State Cannot Meet its Burden ...............................6

   IV.  The Panel Majority Opinion Manifestly Conflicts with
       *Heller* and Bruen in Several Respects ...................................8

      A.  The State's Handgun Ban is Clearly Unconstitutional.................8

      B.  The Panel's Holding that a Firearm is not an Arm
         Conflicts with *Heller* ....................................................9

      C.  The Panel Misconstrued *Heller's* "Useful for Military
         Service" Passage ...........................................................9

      D.  The Panel's Holding Conflicts with *Staples*...................................11

      E.  The Court Failed to Apply *Bruen* to the Magazine Ban.................13

      F.  The Panel Majority's Continued Reliance on *Friedman*
         Cannot be Reconciled with *Bruen* or *Caetano* ...............................14

CONCLUSION      .........................................................................15

# TABLE OF AUTHORITIES

Page

## CASES

*Ass'n of New Jersey Rifle & Pistol Clubs, Inc. v. Att'y Gen. New Jersey*, 910 F.3d 106 (3d Cir. 2018), *abrogated on other grounds by Bruen* ........................................................6

*Barnett v. Raoul*, 3:23-cv-209 (S.D. Ill.) ...........................................................7

*Caetano v. Massachusetts*, 577 U.S. 411 (2016) ...............................................11, 14

*D.C. v. Heller*, 554 U.S. 570 (2008) ...............................................................*passim*

*Duncan v. Bonta*, 83 F.4th 803 (9th Cir. 2023) ...............................................7

*Friedman v. City of Highland Park, Ill.*, 577 U.S. 1039 (2015) .....................7, 8

*Friedman v. City of Highland Park, Illinois*, 784 F.3d 406 (7th Cir. 2015) .................................................................................14, 15

*Heller v. D.C.*, 670 F.3d 1244 (D.C. Cir. 2011) ...............................................12

*Kolbe v. Hogan*, 849 F.3d 114 (4th Cir. 2017) ...............................................11

*McDonald v. City of Chicago, Ill.*, 561 U.S. 742 (2010).................................4

*New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 142 S. Ct. 2111 (2022) .............................................................................*passim*

*NRA v. Chicago*, 567 F.3d 856 (7th Cir. 2009) ...............................................4

*Staples v. United States*, 511 U.S. 600 (1994) ...............................................11, 12

## STATUTES

720 ILCS 5/24-1.9 ...........................................................................................2

720 ILCS 5/24-1.10 ......................................................................................2, 3

720 ILCS 5/24-1.9(c)-(d) ...............................................................................3

720 ILCS 5/24-1.10 ...................................................................................2

720 ILCS 5/24-1.10(c)-(d) ........................................................................3

720 ILCS 5/24-1(b) and 1.10(g) ...............................................................3

Chapter 19 of Title 3 of the Naperville Municipal Code ...............................2

Fed. R. App. P. 35(b) ................................................................................1

Protect Illinois Communities Act, Pub. Act 102-1116 (2023) .....................*passim*

U.S. Const. amend. II .............................................................................passim

U.S. Const. amend. V ...............................................................................10

## OTHER AUTHORITIES

David B. Kopel, *The History of Firearm Magazines and Magazine
    Prohibitions*, 78 ALB. L. REV. 849 (2015)......................................................1

iv

**RULE 35(b)(1) STATEMENT IN SUPPORT OF REHEARING IN BANC**

Plaintiffs respectfully petition the Court to grant rehearing in banc pursuant to Fed. R. App. P. 35(b) because the panel's decision conflicts with multiple decisions of the Supreme Court.

This action concerns the Protect Illinois Communities Act, Pub. Act 102-1116 (2023) ("the Act"), which bans certain firearms and magazines. Plaintiffs moved for a preliminary injunction because the Act violates their right to keep and bear arms protected by the Second Amendment. The district court denied their motion, and a divided panel affirmed, holding that Plaintiffs had failed to demonstrate the Act is likely unconstitutional. Document 170 ("Slip op.") 31, 47. But the "assault weapons" and "large capacity magazines"[1] banned by the Act are possessed by millions of law-abiding Americans who, overwhelmingly, use them for lawful purposes, including self-defense in the home. Indeed, the Act bans the most popular rifle in America.[2] The Act thus bans weapons in common use for lawful purposes and is therefore manifestly unconstitutional pursuant to Supreme Court precedent, particularly *D.C. v. Heller*, 554 U.S. 570 (2008) and *New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 142 S. Ct. 2111 (2022). The panel's conflicts with these decisions of the Supreme Court.

---

[1] Both "assault weapon" and "large capacity magazine" are terms of political derision, not accurate firearm terminology.

[2] Slip op. 68, n. 9 (Brennan, J., dissenting) (AR-15 banned by the Act is the most popular rifle in Ameria. (*quoting* David B. Kopel, *The History of Firearm Magazines and Magazine Prohibitions*, 78 ALB. L. REV. 849, 859 (2015)).

The Act's handgun ban[3] is particularly unconstitutional. It is important to keep in mind that *Bruen* did not supplant *Heller*; it reiterated it. *Bruen*, 142 S. Ct. at 2129. The panel acknowledged this point. Slip op. 24. Thus, *Heller's* central holding remains good law, and that holding applied specifically to D.C.'s handgun ban. *Heller* held that handgun bans are categorically unconstitutional. 554 U.S. at 628. The panel majority acknowledged *Heller's* holding that citizens have a constitutional right to keep and bear handguns. Slip op. 3. It also acknowledged that the Act bans certain pistols (i.e., handguns). Slip op. 6. But other than acknowledging the existence of the State's handgun ban, the panel ignored it. One searches the panel's opinion in vain for any portion addressing the handgun ban at all, much less explaining why it is not categorically unconstitutional under *Heller*. Thus, the panel decision conflicts with a Supreme Court decision in this respect as well.

## FACTUAL AND PROCEDURAL BACKGROUND

The Act became effective on January 10, 2023.[4] This action concerns the arms bans in the Act that are codified at 720 ILCS 5/24-1.9 and 5/24-1.10. Those sections generally prohibit the purchase and sale of "assault weapons" and "large capacity ammunition feeding devices" (defined as magazines accepting more than 10 rounds of ammunition for a long gun or more than 15 rounds of

---

[3] Most of the "assault weapons" banned by Act are long guns. While the principles announced in *Heller* apply to long guns, the panel's disregard of *Heller's* specific holding regarding handguns is particularly problematic.
[4] On August 17, 2022, the City Council of Naperville, Illinois enacted Chapter 19 of Title 3 of the Naperville Municipal Code (the "Ordinance"). The Ordinance bans the sale of so-called "assault rifles." The prohibitions of the Ordinance largely overlap with those of the Act. Therefore, like the panel, Plaintiffs will focus on the Act.

ammunition for handguns). Effective January 1, 2024, the Act will also pro-
hibit the mere possession of assault weapons and magazines except for those
possessed prior to the Act. *Id*. §§ 1.9(c)-(d) & 1.10(c)-(d). The Act provides for
substantial criminal penalties for violation of its provisions. 720 ILCS 5/24-1(b)
and 1.10(g).

Plaintiff Robert C. Bevis is a law-abiding citizen and business owner.
ECF No. 50-2 ¶ 2. Plaintiff Law Weapons, Inc. ("LWI") is engaged in the com-
mercial sale of firearms.  Plaintiff National Association for Gun Rights
("NAGR") is a Second Amendment advocacy organization. Plaintiffs and/or
their members and/or customers desire to exercise their Second Amendment
right to acquire, possess, carry, sell, purchase, and transfer the banned arms
for lawful purposes including, but not limited to, the defense of their homes.
ECF No. 51 ¶ 3; ECF No. 50-2 ¶ 4. The challenged laws prohibit or soon will
prohibit Plaintiffs from exercising their Second Amendment rights in this fash-
ion. *Id*. LWI asserts the claims in this action on its own behalf and on behalf of
its customers who are prohibited by the challenged laws from acquiring arms
protected by the Second Amendment. *Id*. NAGR asserts its claims on behalf of
its members who reside in the State. *Id*.

Plaintiffs brought this action challenging the Ordinance and the Act un-
der the Second Amendment. ECF No. 48, pp 6-7. Plaintiffs filed a motion for
preliminary injunction with respect to the Ordinance on November 18, 2022.
ECF No. 10. Plaintiffs filed a motion for preliminary injunction with respect to

the Act on January 24, 2023. ECF No. 50. The district court denied Plaintiffs' motions for preliminary injunction in an order dated February 17, 2023. ECF No. 63. Plaintiffs appealed the district court's order to this Court on February 21, 2023. ECF No. 64. The panel affirmed the district court's denial of Plaintiffs' motion for preliminary injunction in an opinion dated November 3, 2023. Slip op. 47.

## REASONS FOR GRANTING THE PETITION

### I.  The *Heller/Bruen* Framework for Second Amendment Analysis

In *Heller,* the Supreme Court held (a) the Second Amendment protects an individual right to keep and bear arms that is not tied to militia membership; and (b) an absolute prohibition of a weapon in common use for lawful purposes is a per se violation of that right. 554 U.S. at 592, 628. In *McDonald v. City of Chicago, Ill*., 561 U.S. 742 (2010), the Court held that the right to keep and bear arms is among the fundamental rights necessary to our system of ordered liberty, and therefore the Second Amendment is applicable to the States through the Fourteenth Amendment. *Id*., 561 U.S. at 778 (*reversing NRA v. Chicago*, 567 F.3d 856 (7th Cir. 2009) (Easterbrook, J.)).

Building on the text, history, and tradition framework for analysis of Second Amendment challenges first announced in *Heller*, in *Bruen*, the Court articulated the following general framework for resolving such challenges: "We reiterate that the standard for applying the Second Amendment is as follows: [1] When the Second Amendment's plain text covers an individual's conduct,

the Constitution presumptively protects that conduct. [2] The government must then justify its regulation by demonstrating that it is consistent with the Nation's historical tradition of firearm regulation." *Id.*, 142 S. Ct. at 2129-30. These steps have come to be known as the "plain text" step and the "history and tradition" step.

## II.   *Bruen* Step 1: The Plain Text Covers Plaintiffs' Conduct

The "textual analysis focuse[s] on the normal and ordinary meaning of the Second Amendment's language." *Bruen*, 142 S. Ct. at 2127 (*citing Heller*, 554 U.S. at 576–577, 578) (internal quotation marks omitted). Plaintiffs desire to acquire and possess the banned "assault weapons" and magazines. Thus, the first issue is whether the plain text of the Second Amendment covers this conduct. The plain text provides: "A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed." U.S. Const. amend. II. In *Heller*, the Court held that a handgun is an "arm" within the meaning of the Second Amendment. 554 U.S. at 581, 628–29. In reaching that conclusion, the Court noted that, as a general matter, the "18th-century meaning" of the term "arms" is "no different from the meaning today." *Id.* at 581. Then, as now, the Court explained, the term generally referred to "weapons of offence, or armour of defence." *Id.* (cleaned up). The Court further noted that all relevant sources of the original public meaning of "arms" agreed that "all firearms constituted 'arms'" within the then-understood meaning of that term. *Id.* And, just as the scope of protection afforded by

5

other constitutional rights extends to modern variants, so too the Second Amendment "extends, prima facie, to all instruments that constitute bearable arms, even those that were not in existence at the time of the founding." *Id.* at 582. Thus, the banned firearms are obviously "arms" covered by the plain text and thus *prima facia* protected. (Whether they are actually protected is a matter resolved at the second step.)

In addition to the obvious case of firearms, the general definition of "arms" in the Second Amendment, "covers modern instruments that facilitate armed self-defense." *Bruen*, 142 S. Ct. at 2132. The magazines banned by the State fit neatly within this definition because they are essential to the operation of modern semi-automatic firearms. *See Ass'n of New Jersey Rifle & Pistol Clubs, Inc. v. Att'y Gen. New Jersey*, 910 F.3d 106, 116 (3d Cir. 2018), *abrogated on other grounds by Bruen.*

In summary, the Plaintiffs' conduct in seeking to acquire and possess the banned "assault weapons" and magazines is covered by the plain text of the Second Amendment. Their conduct is, therefore, presumptively protected by the Constitution.

## III. *Bruen* Step 2: Because the Banned Arms are in Common Use, the State Cannot Meet its Burden

The State retained Dr. Louis Klarevas as an expert in this matter. Dr. Klarevas estimated that there are approximately 24.4 million "assault

weapons" in circulation in American society.[5] Dr. Klarevas also stated that in 2022 in the United States, 63 people were killed in seven mass shootings.[6] Thus, according to Defendants' own expert, at least 23,999,999,937 of the 24.4 million "assault weapons" in circulation were not used in mass shootings last year. Defendants insist that the 99.9999% of such weapons that were not used in mass shootings last year may be banned because of the .0001% that were. Defendants are wrong.

The panel used the AR-15 semi-automatic rifle as the paradigmatic example of the kind of weapon banned by the Act. Slip op. 6. The State's own expert acknowledged that Americans own tens of millions of AR-15 and similar rifles, and the overwhelming majority of those weapons are used for lawful purposes. Under the Supreme Court's precedents, particularly *Heller*, "*that is all that is needed* for citizens to have a right under the Second Amendment to keep such weapons." *Friedman v. City of Highland Park, Ill.*, 577 U.S. 1039 (2015) (Thomas, J., joined by Scalia, J., dissenting from denial of certiorari) (emphasis added). The same is true for the so-called "large capacity magazines" banned by the Act. *Duncan v. Bonta*, 83 F.4th 803, 816 (9th Cir. 2023)

---

[5] *Barnett v. Raoul*, 3:23-cv-209 (S.D. Ill.), ECF 37-4, pg. 12. Dr. Klarevas uses the term "modern sporting rifle" (NSSF's term for AR-15 and AK-47 platform rifles) as a proxy for "assault weapons." For reasons that are unclear, he suggests that those rifles owned by law enforcement officers do not count as in circulation. Even granting this dubious premise, it is undisputed that tens of millions of the weapons are in circulation.
[5] Plaintiffs point to Judge Bumatay's dissenting opinion because his reasoning is consistent with *Heller* and *Bruen*, as opposed to the majority opinion which, inexplicably, engaged in practically no analysis at all.
[6] *Barnett v. Raoul*, 3:23-cv-209 (S.D. Ill.), ECF 37-4, pg. 66.

7

(Bumatay, J., dissenting from order granting stay) (*quoting* Justice Thomas's dissent in *Friedman*).

Indeed, this is *Heller's* central holding. The Court performed an exhaustive search of the historical record and concluded that no Founding-era regulation "remotely burden[ed] the right of self-defense as much as an absolute ban" on a weapon in common use. *Id.*, 554 U.S. at 632. Thus, laws that ban weapons in common use for lawful purposes are categorically unconstitutional. *Id.*, at 628. This necessarily means that the State cannot carry its burden under *Bruen's* step two (the history and tradition step). After an exhaustive search, *Heller* concluded that it is impossible to demonstrate that a ban of a weapon in common use is consistent with the Nation's history and tradition of firearms regulation. It follows that the State's ban on weapons in common use for lawful purposes, like the ban at issue in *Heller*, is categorically unconstitutional.

## IV. The Panel Majority Opinion Manifestly Conflicts with *Heller* and *Bruen* in Several Respects

### A. The State's Handgun Ban is Clearly Unconstitutional

The D.C. ordinance challenged in *Heller* banned the possession of handguns in the city even for self-defense in the home. The Court invalidated the ordinance, writing "banning from the home the most preferred firearm in the nation to keep and use for protection of one's home and family' [fails] constitutional muster." 554 U.S. at 628-29 (cleaned up). There cannot be the slightest doubt that laws absolutely banning handguns are unconstitutional. Indeed,

the panel majority acknowledged that "everyone can agree" that handgun bans are unconstitutional. Slip op. 3. The panel majority also acknowledged the "Illinois Act bans certain ... pistols." Slip op. 6. Having acknowledged that the Act bans certain handguns, one would expect the majority to address the issue further and demonstrate how the State's handgun ban is somehow distinguishable from the handgun ban invalidated in *Heller*. But it did not. Indeed, other than acknowledging that the State's handgun bans exists, the majority never mentioned it again. Far less did it demonstrate how the handgun ban can be reconciled with *Heller*. Thus, the opinion manifestly conflicts with *Heller*.

**B.     The Panel's Holding that a Firearm is not an *Arm* Conflicts with *Heller***

As noted above, the "textual analysis focus[es] on the normal and ordinary meaning of the Second Amendment's language." *Bruen*, 142 S. Ct. at 2127 (*citing Heller*, 554 U.S. at 576–577, 578) (internal quotation marks omitted). *Heller* made the commonsense observation that all firearms are arms. 554 U.S. at 581. Yet the panel majority held that the firearms banned by the Act are not "arms" as that term is used in the Second Amendment. This holding cannot be reconciled with *Heller*.

**C.     The Panel Misconstrued *Heller's* "Useful for Military Service" Passage**

The panel majority held that to prevail on the merits Plaintiffs have the burden of showing that the banned arms are not "predominantly useful in military service." Slip op. 28. As noted, the panel used the AR-15 as the

paradigmatic example of the kind of weapon the statute covers. Slip op. 6. The panel then held that AR-15s are similar to the M-16s that were once used in the military and are therefore not protected by the Second Amendment. Slip op. 26, 34 (*citing Heller*, 554 U.S. at 627 (weapons "most useful in military service" may be banned)).

There are two problems with this, one factual and one legal. First, as Judge Brennan accurately noted, the semi-automatic AR-15 is a civilian, not military, weapon, and no army in the world uses a service rifle that is only semiautomatic. Slip op. 82. More importantly, even assuming for the sake of argument that the AR-15 might be used by the military, the panel majority still misconstrued *Heller*, as the very passage they cited demonstrates. In that passage, the Court held that weapons in common use brought to militia service by members of the militia are protected by the Second Amendment. *Id*. What do militia members do with those weapons when they bring them to militia service? They fight wars.[7] It would be extremely anomalous, therefore, if *Heller* were interpreted to mean simultaneously that (1) weapons brought by militia members for military service are protected by the Second Amendment, and (2) all weapons used for military service are not protected by the Second Amendment. This is obviously not the law. Rather, "*Heller* [merely] recognized that militia members traditionally reported for duty carrying 'the sorts of lawful weapons that they possessed at home,' and that the Second Amendment

---

[7] *See* U.S. Const. amend. V (referring to "the Militia, when in actual service in time of War").

therefore protects such weapons as a class, regardless of any particular weapon's suitability for military use." *Caetano v. Massachusetts*, 577 U.S. 411, 419 (2016) (Alito, J., concurring). *See also Kolbe v. Hogan*, 849 F.3d 114, 156 (4th Cir. 2017) (Traxler, J., dissenting) (calling an arm a "weapon of war" is irrelevant, because under *Heller* "weapons that are most useful for military service" does not include "weapons typically possessed by law-abiding citizens.").

### D.    The Panel's Holding Conflicts with *Staples*

As discussed above, the panel held that AR-15s are similar to M-16s and may therefore be banned. Slip op. 34-35. As Judge Brennan correctly wrote, this holding directly conflicts with *Staples v. United States*, 511 U.S. 600 (1994). Slip op. 67. *Staples* held that the difference between semi-automatic weapons like the AR-15 and the automatic M-16 is legally significant. Indeed, the contrast between semiautomatic weapons and automatic weapons like the M-16 was key to the Court's analysis. *Id.*, at 603. The Court contrasted ordinary firearms such as the AR-15 at issue in that case with "machineguns, sawed-off shotguns, and artillery pieces," and stated that guns falling outside of the latter categories "traditionally have been *widely accepted as lawful possessions*." *Id.*, at 612 (emphasis added). The point of the discussion was that guns like the AR-15 have been widely accepted as lawful possessions, and therefore *mens res* was not established merely be establishing that the defendant knew he was in possession of an AR-15. Thus, the panel's holding that AR-

11

15s are legally indistinguishable from machine guns like the M-16 conflicts with *Staples.*

The panel believes that semi-automatic firearms may be banned because they are similar to automatic firearms. But that is wrong because many of the handguns that *Heller* held are protected by the Second Amendment are also semi-automatic. In *Heller v. D.C.*, 670 F.3d 1244 (D.C. Cir. 2011), then-Judge Kavanaugh put the matter this way: "D.C. asks this Court to find that the Second Amendment protects semi-automatic handguns but not semi-automatic rifles. There is no basis in *Heller* for drawing a constitutional distinction between semi-automatic handguns and semi-automatic rifles." *Id.*, at 1286 (Kavanaugh, J., dissenting). And then Judge Kavanaugh got to the crux of the matter raised by the panel's holding:

> [A line between semi-automatic handguns and semi-automatic rifles] might be drawn out of a bare desire to restrict *Heller* as much as possible or to limit it to its facts, but that is not a sensible or principled constitutional line for a lower court to draw or a fair reading of [*Heller*].

*Id.*, n.14.

In summary, as then-Judge Kavanaugh wrote, there is no meaningful constitutional distinction between the semi-automatic handguns protected under *Heller* and the semi-automatic rifles banned by the State. It follows that the panel's holding that the rifles are unprotected because their ability to fire semi-automatically makes them similar to machine guns conflicts with *Heller.*

### E.     The Court Failed to Apply *Bruen* to the Magazine Ban

Concerning the Act's ban of "large capacity magazines," the panel

wrote:

> Turning now to large-capacity magazines, we conclude that they also
> can lawfully be reserved for military use. Recall that these are defined
> by the Act as feeding devices that have in excess of 10 rounds for a rifle
> and 15 rounds for a handgun. Anyone who wants greater firepower is
> free under these laws to purchase several magazines of the permitted
> size. Thus, the person who might have preferred buying a magazine
> that loads 30 rounds can buy three 10-round magazines instead.

Slip op. 34.

The Court might wonder what else the panel said to justify its decision

to uphold the magazine ban. But that's it, one paragraph. This is not judicial

analysis. This is judicial fiat. Moreover, the panel's fiat conflicts with *Heller*.

As discussed above, the fact that a weapon may be used by the military does

not mean that the State can ban it if the weapon is in common use for lawful

purposes. Moreover, the panel seems to be under the impression that the State

can ban some magazines (even though they are in common use) so long as it

deigns to allow its citizens to acquire other magazines. But there is no limiting

principle to the panel's reasoning. Can the State also ban magazines with a

capacity in excess of two rounds because anyone who wants greater firepower

is free to purchase several magazines of the permitted size? It would seem so,

because under the panel's analysis, a person who might have preferred buying

a magazine that loads 30 rounds can buy 15 two-round magazines instead. This

conclusion – which flows logically from the panel's holding – obviously conflicts

13

with *Heller*. Indeed, *Heller* rejected the precise argument advanced by the panel when it held that it is "no answer" to say that banning a commonly possessed arm is permitted so long as other arms are allowed. 554 U.S. at 629.

### F.     The Panel Majority's Continued Reliance on *Friedman* Cannot be Reconciled with *Bruen* or *Caetano*

In *Friedman v. City of Highland Park, Illinois*, 784 F.3d 406 (7th Cir. 2015), the Court announced a unique three-part test to determine Second Amendment questions. Under this test, a court asks: "whether a regulation [1] bans weapons that were common at the time of ratification or [2] those that have 'some reasonable relationship to the preservation or efficiency of a well regulated militia' . . . and [3] whether law-abiding citizens retain adequate means of self-defense." *Id.*, 784 F.3d at 410. All three legs of this test are foreclosed by Supreme Court precedent:

[1] The Second Amendment's "reference to 'arms' does not apply only to those arms in existence in the 18th century." *Bruen*, 142 S. Ct. at 2132 (cleaned up).

[2] The Second Amendment's operative clause "does not depend on service in the militia." *Bruen*, 142 S. Ct. at 2127.

[3] "[T]he right to bear other weapons is 'no answer' to a ban on the possession of protected arms." *Caetano v. Massachusetts*, 577 U.S. 411, 421 (2016) (*per curiam*), *quoting Heller*, 554 U.S. at 629.

It is a mystery why the panel majority believes *Friedman* has any continuing relevance at all when all three legs of the stool upon which it is propped

have been knocked out by the Supreme Court. It is even more mystifying that the panel would base its holding in part on the obviously abrogated *Friedman* test, and doing so obviously conflicts with the Supreme Court decisions that knocked out *Friedman's* three legs set forth above.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request the Court to grant their petition for rehearing in banc.

*/s/ Barry K. Arrington*

_____
Barry K. Arrington
Arrington Law Firm
4195 Wadsworth Boulevard
Wheat Ridge, Colorado 80033
(303) 205-7870
barry@arringtonpc.com

Jason R. Craddock
Law Office of Jason R. Craddock
2021 Midwest Rd., Ste. 200
Oak Brook, IL 60523
(708) 964-4973
craddocklaw@icloud.com

**CERTIFICATE OF COMPLIANCE WITH**
**Fed. R. App. P. 32(a)(7), Fed. R. App. P. 32(g) and Cir. R. 32(b) & (c)**

The undersigned, counsel of record for the Appellants furnishes the following in compliance with F.R.A.P. Rule 32(a)(7):

The undersigned hereby certifies that this brief complies with the type volume limit of Fed. R. App. P. 32(a)(7)(B) because, excluding the parts of the document exempted by Fed. R. App. P. 32(f), this brief contains **3,763** words.

The undersigned further certifies that this brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word for Office 365 in 12 point Century Schoolbook font.

*/s/ Barry K. Arrington*

_____

Barry K. Arrington
Arrington Law Firm
4195 Wadsworth Boulevard
Wheat Ridge, Colorado 80033
(303) 205-7870
barry@arringtonpc.com

16

### CERTIFICATE OF SERVICE

I hereby certify that on November 13, 2023, I electronically filed a true and correct copy of the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing via email counsel of record:

*/s/ Barry K. Arrington*

_____

Barry K. Arrington
Arrington Law Firm
4195 Wadsworth Boulevard
Wheat Ridge, Colorado 80033
(303) 205-7870
barry@arringtonpc.com

17